IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| PEAKOPIA, LLC, a Texas limited liability company, | Civil Action No. _____ |
| Plaintiff, | |
| v. | **COMPLAINT** |
| MUNOZ FRESH PRODUCE LLC, a Nebraska limited liability company; MARLENE SANTOS, an individual; and DELENEY SANTOS, an individual, | |
| Defendants. | |

## INTRODUCTION

This action arises from Defendant Munoz Fresh Produce LLC's failure to pay for perishable agricultural commodities purchased from Plaintiff Peakopia, LLC. That failure caused Peakopia significant financial harm, including damages, interest, costs, and attorneys' fees. Accordingly, Peakopia brings this complaint to (a) enforce its rights under the Perishable Agricultural Commodities Act of 1930, as amended, 7 U.S.C. §§ 499a–t ("PACA"), including the statutory PACA trust, 7 U.S.C. § 499e(c) ("PACA Trust"), as well as under federal common law and state law, and (b) recover the damages resulting from Munoz Fresh's nonpayment.

## PARTIES

1. Plaintiff is Peakopia, LLC ("Peakopia"), a Texas limited liability company with its principal business location in Houston, Texas.

2. Defendants are:

(a) Munoz Fresh Produce LLC, a Nebraska limited liability company ("Munoz Fresh") with its principal business location in Omaha, Nebraska.

(b) Marlene Santos, an individual who, upon information and belief, resides in Omaha, Nebraska.

(c) Deleney Santos, an individual who, upon information and belief, resides in Omaha, Nebraska.

## JURISDICTION

3. This Court has federal question subject matter jurisdiction over Peakopia's claims, because they arise under PACA, including the PACA Trust provisions and federal common law. 28 U.S.C. § 1331; 7 U.S.C. §§ 499e(b); 7 U.S.C. § 499e(c)(5).

4. This Court has supplemental jurisdiction over Peakopia's state-law claims, because they are so related to the PACA and federal common law claims that they form part of the same case or controversy. 28 U.S.C. § 1367(a).

5. Venue is proper because this District is where (a) Munoz Fresh has its principal business location, (b) the contracts were entered into, (c) a substantial part of the events and omissions giving rise to Peakopia's claims, and (d) the relevant property is located. 28 U.S.C. § 1391(b).

6. This Court has personal jurisdiction over Munoz Fresh because it maintained a business presence in this district, received Peakopia's products here, and committed tortious acts in Nebraska that caused Peakopia's injuries.

7. This Court also has personal jurisdiction over Marlene Santos because she resides in this district and engaged in substantial and intentional business conduct in Nebraska

directly related to Peakopia's claims, including Munoz Fresh's breach of its fiduciary duties under the PACA Trust. Her failure to ensure Munoz Fresh's compliance with its PACA Trust duties resulted in tortious conduct causing injury in Nebraska.

8. This Court also has personal jurisdiction over Deleney Santos because he resides in this district and engaged in substantial and intentional business conduct in Nebraska directly related to Peakopia's claims, including Munoz Fresh's breach of its fiduciary duties under the PACA Trust. His failure to ensure Munoz Fresh's compliance with its PACA Trust duties resulted in tortious conduct causing injury in Nebraska.

## FACTS COMMON TO ALL COUNTS

9. Peakopia is a licensed produce dealer that buys and sells wholesale quantities of perishable agricultural commodities, as defined under PACA, including all fresh and frozen fruits and fresh vegetables ("produce").

10. Munoz Fresh is also a licensed produce dealer that buys and sells produce.

11. Between May 13, 2025, and August 1, 2025, Peakopia and Munoz Fresh contracted for Peakopia to sell Munoz Fresh produce, shipped in interstate commerce, and for Munoz Fresh to pay Peakopia $164,345.00 for the produce ("Transactions").

12. Munoz Fresh received and accepted the produce from Peakopia.

13. For each transaction, Peakopia sent an invoice to Munoz Fresh itemizing the agreed-upon quantities and types of produce, the contract prices, PACA prompt for the payment term, and the amounts owed by Munoz Fresh.

14. Each invoice included terms for attorneys' fees, costs, and 1.5% monthly interest (18% annually) on overdue balances.

15. Munoz Fresh received the invoices and did not object to their terms.

16. Despite receiving and accepting the produce and invoices, Munoz Fresh failed to remit payment to Peakopia.

17. Munoz Fresh currently owes Peakopia the principal amount of $164,345.00, plus interest at the rate of 1.5% per month (equivalent to 18% annually) from the date each transaction became overdue, as well as attorneys' fees and collection costs.

## CLAIMS FOR RELIEF

### COUNT I
### MUNOZ FRESH BREACH OF CONTRACT

18. Peakopia incorporates by reference its allegations in paragraphs 1 through 17.

19. Peakopia and Munoz Fresh entered into the Transactions. *See* Paragraph 11.

20. Munoz Fresh breached the contracts by failing to pay for the produce as agreed.

21. Peakopia has fully performed all conditions precedent required under the contracts.

22. Because Munoz Fresh breached the parties' contracts, Peakopia has suffered damages of at least $164,345.00, plus interest at the rate of 1.5% per month (equivalent to 18% annually) from the date each transaction became overdue, as well as attorneys' fees and collection costs.

WHEREFORE, Peakopia requests a judgment in its favor and against Munoz Fresh in the principal amount of $164,345.00, plus interest at the rate of 1.5% per month (equivalent to 18% annually) from the date each transaction became overdue, as well as attorneys' fees and collection costs.

### COUNT II
### MUNOZ FRESH FAILURE TO PAY PROMPTLY
### 7 U.S.C. §§499b(4), 499e(a) and 499e(b)

23. Peakopia incorporates by reference its allegations in paragraphs 1 through 17.

24. Munoz Fresh qualifies as a produce dealer under PACA because it bought and sold at least 2,000 pounds of produce in a single day.

25. During the Transactions, Munoz Fresh held a valid PACA license (No. 20250014) issued by the United States Department of Agriculture ("USDA").

26. As a PACA-licensed produce dealer, Munoz Fresh must tender full payment promptly to its unpaid produce suppliers and sellers.

27. Peakopia and Munoz Fresh entered into the Transactions. *See* Paragraph 11.

28. Munoz Fresh failed to pay for the produce within the payment term.

29. Because Munoz Fresh failed to pay promptly, Peakopia has incurred damages of at least $164,345.00, plus interest at the rate of 1.5% per month (equivalent to 18% annually) from the date each transaction became overdue, as well as attorneys' fees and collection costs.

WHEREFORE, Peakopia seeks an Order directing Munoz Fresh to immediately pay Peakopia $164,345.00, plus interest at the rate of 1.5% per month (equivalent to 18% annually) from the date each transaction became overdue, as well as attorneys' fees and collection costs.

## COUNT III
## DEFENDANTS' DECLARATORY RELIEF
## VALIDATING PACA TRUST CLAIM
## 7 U.S.C. §499e(c)

30. Peakopia incorporates by reference its allegations in paragraphs 1 through 17.

31. Munoz Fresh qualifies as a produce dealer under PACA because it bought and sold at least 2,000 pounds of produce in a single day.

32. During the Transactions, Munoz Fresh held a valid PACA license (No. 20250014) issued by the USDA.

33. Peakopia and Munoz Fresh entered into the Transactions. *See* Paragraph 11.

34. The sales occurred in interstate commerce, as the produce was part of the regular flow of commerce customary in the industry, where commodities are shipped from one state with the expectation that they will reach their destination, after purchase, in another state.

35. By transferring ownership, possession or control of the produce to Munoz Fresh, Peakopia became eligible to participate in the PACA Trust. 7 C.F.R. §46.46(c)(1).

36. For each transaction, Munoz Fresh became a trustee under the PACA Trust upon receiving and accepting the produce, with Peakopia as the PACA Trust beneficiary.

37. During the Transactions, Peakopia held a valid PACA license (No. 20180296) issued by the USDA.

38. As a PACA licensee, Peakopia preserved its rights as a PACA Trust beneficiary of Munoz Fresh by including the PACA Trust statutory statement on each invoice sent to Munoz Fresh.

39. Munoz Fresh breached its PACA Trust duties by failing to pay for the produce purchased from Peakopia and by failing to maintain sufficient PACA Trust assets to satisfy Peakopia's PACA Trust claim.

40. As an unpaid produce supplier, seller, and PACA Trust beneficiary, Peakopia is entitled to protection under the PACA Trust, including the right to payment from Munoz Fresh's PACA Trust assets.

WHEREFORE, Peakopia seeks an Order declaring that it holds a valid PACA Trust claim against Munoz Fresh in the principal amount of $164,345.00, plus interest at the rate

of 1.5% per month (equivalent to 18% annually) from the date each transaction became overdue, as well as attorneys' fees and collection costs.

## COUNT IV
## MUNOZ FRESH TO PREVENT AND RESTRAIN DISSIPATION OF THE PACA TRUST, CREATION OF COMMON FUND AND PERMANENT INJUNCTION
## 7 U.S.C. §499e(c)(5)

41. Peakopia incorporates by reference its allegations in paragraphs 1 through 17 and 31 through 40.

42. PACA broadly defines assets subject the PACA Trust to include all produce received by Munoz Fresh in any transaction; all inventories of food or other products derived from such produce; all accounts receivable or proceeds from the sale of the produce and its products; and all assets commingled with, purchased with, or otherwise acquired using those proceeds (collectively, "PACA Trust Assets"). *See* 7 U.S.C. § 499e(c); 7 C.F.R. § 46.46(b).

43. As a PACA trustee, Munoz Fresh is required to maintain PACA Trust Assets in a nonsegregated, floating trust so that sufficient PACA Trust Assets are freely available to satisfy outstanding obligations to Peakopia and other unpaid produce suppliers with valid PACA Trust claims as those claims become due. *See* 7 C.F.R. § 46.46(d)(1).

44. Munoz Fresh must hold the PACA Trust Assets in trust for Peakopia and any unpaid produce suppliers with valid PACA Trust claims until full payment has been made on all amounts owed in connection with their respective transactions. *See* 7 U.S.C. § 499e(c); 7 C.F.R. § 46.46(c)(1).

45. Any actions and omissions by Munoz Fresh that are inconsistent with its obligations to maintain sufficient PACA Trust Assets, such as diverting those assets or impairing the ability of Peakopia and other unpaid produce suppliers with valid PACA Trust

claims to recover amounts owed, are unlawful under PACA and constitute dissipation of the PACA Trust. *See* 7 C.F.R. §§ 46.46(a)(2) and (d)(1).

46. Munoz Fresh accepted the produce from Peakopia. *See* Paragraph 11.

47. Upon information and belief, Munoz Fresh failed to satisfy its duties as a PACA trustee by not maintaining sufficient PACA Trust Assets to satisfy Peakopia's PACA Trust claim, and by diverting PACA Trust Assets to pay non-trust expenses and creditors.

48. Munoz Fresh's failure to maintain sufficient PACA Trust Assets and its diversion of those assets to non-trust obligations are unlawful under PACA and constitute dissipation of the PACA Trust.

49. Peakopia seeks to prevent and restrain further dissipation of the PACA Trust, ensure proper segregation and administration of PACA Trust Assets, and establish a common fund from which Peakopia and other unpaid produce suppliers with valid PACA Trust claims may be paid.

WHEREFORE, Peakopia requests the following Orders:

(a) That the Court exercises *in rem* jurisdiction over the PACA Trust Assets;

(b) That Munoz Fresh, and all persons acting in concert with it, be permanently enjoined from dissipating PACA Trust Assets;

(c) That Munoz Fresh be ordered to segregate PACA Trust Assets into a separate account to create a common fund from which Peakopia and other unpaid produce suppliers with valid PACA Trust claims may receive payment;

(d) That Munoz Fresh be directed to account for all PACA Trust Assets, and maintain sufficient PACA Trust Assets to satisfy the claims of

Peakopia and other unpaid produce suppliers with valid PACA Trust claims; and

(e) That the Court oversee the administration of the PACA Trust Assets, including the collection and marshalling of those assets, determination of the validity and amount of claims asserted against the PACA Trust Assets, and distribution of funds to satisfy all valid PACA Trust claims.

## COUNT V
## MUNOZ FRESH ENFORCEMENT OF PAYMENT FROM THE PACA TRUST
## 7 U.S.C. §499e(c)(5)

50. Peakopia incorporates by reference its allegations in paragraphs 1 through 17, 31 through 40, and 42 through 49.

51. Munoz Fresh received and accepted the produce from Peakopia. *See* Paragraph 11.

52. Munoz Fresh has custody and control over the PACA Trust Assets from which Peakopia is entitled to payment.

53. Peakopia holds a valid PACA Trust claim for the amounts owed in connection with the Transactions.

54. Munoz Fresh breached its duties as a PACA trustee by failing to pay Peakopia for the Transactions, by not maintaining sufficient PACA Trust Assets to satisfy Peakopia's PACA Trust claim, and by diverting PACA Trust Assets to pay non-trust expenses and creditors.

55. Because Munoz Fresh breached its PACA trustee obligations, Peakopia has suffered damages in an amount not less than $164,345.00, plus interest at the rate of 1.5% per

month (equivalent to 18% annually) from the date each transaction became overdue, as well as attorneys' fees and collection costs.

WHEREFORE, Peakopia seeks an Order directing Munoz Fresh to satisfy its obligations from the PACA Trust assets until Peakopia receives full payment of the sums owed in connection with the Transactions, which is no less than $164,345.00, plus interest at the rate of 1.5% per month (equivalent to 18% annually) from the date each transaction became overdue, as well as attorneys' fees and collection costs.

## COUNT VI
## MUNOZ FRESH FAILURE TO MAINTAIN THE PACA TRUST
## 7 U.S.C. §§499b(4), 499e(a) and 499e(b)

56. Peakopia incorporates by reference its allegations in paragraphs 1 through 17, 31 through 40, 42 through 49, and 51 through 55.

57. Munoz Fresh received and accepted the produce from Peakopia. *See* Paragraph 11.

58. Munoz Fresh must hold PACA Trust Assets in trust for Peakopia, ensuring that these assets are freely available to satisfy its outstanding obligations to Peakopia until Peakopia receives full payment of the sums owed in connection with the Transactions. 7 U.S.C. § 499e(c)(2); 7 C.F.R. §§ 46.46(b) and (d)(1).

59. Any acts or omissions by Munoz Fresh that are inconsistent with its responsibility to maintain sufficient PACA Trust Assets to pay Peakopia are unlawful and in violation of PACA. 7 U.S.C. § 499b(4).

60. Munoz Fresh failed to maintain sufficient PACA Trust Assets to pay Peakopia.

61. Munoz Fresh breached its duties under the PACA Trust by dissipating PACA Trust Assets and failing to maintain adequate PACA Trust Assets to fully satisfy Peakopia's PACA Trust claim.

62. Because Munoz Fresh failed to maintain adequate PACA Trust Assets to fully satisfy Peakopia's PACA Trust claim, Peakopia has suffered damages equal to any portion of their claims not received from PACA Trust Assets.

WHEREFORE, Peakopia seeks a judgment in its favor and against Munoz Fresh in an amount equal to the difference between $164,345.00, plus interest at the rate of 1.5% per month (equivalent to 18% annually) from the date each transaction became overdue, as well as attorneys' fees and collection costs less any payments received from PACA Trust Assets.

## COUNT VII
## MARLENE SANTOS BREACH OF FIDUCIARY DUTY TO PACA TRUST BENEFICIARIES

63. Peakopia incorporates by reference its allegations in paragraphs 1 through 17, 31 through 40, 42 through 49, and 51 through 55, and 57 through 63.

64. During the Transactions, Marlene Santos was a member of Munoz Fresh, 50% owner, and a reported principal on Munoz Fresh's PACA license.

65. In these capacities, Marlene Santos had control, or the ability to exercise control, over Munoz Fresh's PACA Trust Assets.

66. Marlene Santos had full knowledge of and responsibility for Munoz Fresh's financial operations and business dealings.

67. As a member, owner, and reported principal of Munoz Fresh, Marlene Santos owed fiduciary duties to ensure that Munoz Fresh complied with its duties as a PACA trustee.

68. Munoz Fresh breached its PACA Trust duties by failing to maintain sufficient PACA Trust Assets to satisfy all PACA Trust claims, including Peakopia's.

69. Marlene Santos breached her fiduciary duties by failing to ensure Munoz Fresh's compliance with its duties under the PACA Trust.

70. Because Marlene Santos breached her fiduciary duties, Peakopia has suffered damages in an amount not less than $164,345.00, plus interest at the rate of 1.5% per month (equivalent to 18% annually) from the date each transaction became overdue, as well as attorneys' fees and collection costs.

WHEREFORE, Peakopia seeks a judgment in its favor and against Marlene Santos in an amount equal to the unpaid balance of $164,345.00, plus interest at the rate of 1.5% per month (18% annually) from the date each transaction became overdue, as well as attorneys' fees and collection costs, offset by any amount recovered from Munoz Fresh's PACA Trust Assets.

## COUNT VIII
## DELENEY SANTOS BREACH OF FIDUCIARY DUTY TO PACA TRUST BENEFICIARIES

71. Peakopia incorporates by reference its allegations in paragraphs 1 through 17, 31 through 40, 42 through 49, and 51 through 55, and 57 through 63.

72. During the Transactions, Deleney Santos was a member, 50% owner, and a reported principal on Munoz Fresh's PACA license.

73. In these capacities, Deleney Santos had control, or the ability to exercise control, over Munoz Fresh's PACA Trust Assets.

74. Deleney Santos had full knowledge of, and responsibility for, Munoz Fresh's financial operations and business dealings.

75. As authorized representative, owner, and reported principal of Munoz Fresh, Deleney Santos owed fiduciary duties to ensure that Munoz Fresh complied with its duties as a PACA trustee.

76. Munoz Fresh breached its PACA Trust duties by failing to maintain sufficient PACA Trust Assets to satisfy all PACA Trust claims, including Peakopia's.

77. Deleney Santos breached his fiduciary duties by failing to ensure Munoz Fresh's compliance with its duties as PACA trustee.

78. Because Deleney Santos breached his fiduciary duties, Peakopia has suffered damages in an amount not less than $164,345.00, plus interest at the rate of 1.5% per month (equivalent to 18% annually) from the date each transaction became overdue, as well as attorneys' fees and collection costs.

WHEREFORE, Peakopia seeks a judgment in its favor and against Deleney Santos in an amount equal to the unpaid balance of $164,345.00, plus interest at the rate of 1.5% per month (18% annually) from the date each transaction became overdue, as well as attorneys' fees and collection costs, offset by any amounts recovered from Munoz Fresh's PACA Trust Assets.

Dated this 18th day of November, 2025.

                        PEAKOPIA, LLC, Plaintiff,

By:   */s/ Ryan M. Kunhart*
       Ryan M. Kunhart, #24692
       Dvorak Law Group, LLC
       9500 W. Dodge Rd., Ste. 100
       Omaha, NE  68114
       402-934-4770
       402-933-9630 (facsimile)
       rkunhart@ddlawgroup.com

and

       Steven M. De Falco
       Florida Bar No. 0733571
       (*Pro Hac Admission Pending*)
       S Law Firm, P.L.
       5385 Park Central Court, Ste. 2
       Naples, FL  34109
       239-513-9191
       sdefalco@meuerslawfirm.com

Attorneys for Plaintiff.